## TWYMAN v. McKAY.

## McKAY v. TWYMAN.

---

CONTRACTS; SPECIFIC PERFORMANCE.

Where an aged colored man, who was being cared for by his grandniece,
    upon her indicating her intention to leave him, stated that if she
    did so she would get nothing, but if she would stay he was willing
    to sign a statement from which she would see she would get some-
    thing, and thereupon one of his two sisters wrote a paper to the
    effect that at his death he wanted his house and $800 to go to
    his grandniece, which paper he signed and his sisters witnessed, it
    was *held* that the grandniece was entitled to the specific perform-
    ance of the agreement, after the death of her granduncle, she hav-
    ing remained with him, but that she was not entitled, in addition
    to the house and money mentioned, to compensation for her serv-
    ices from the date of the paper to the time of his death.   (Citing
    *Whitney* v. *Hay,* 15 App. D. C. 164, s. c. 181 U. S. 77.)

Nos. 2876 and 2877.   Submitted January 2, 1917.   Decided February 5,
                            1917.

HEARING on cross appeals from a decree of the Supreme
Court of the District of Columbia in a suit for the specific per-
formance of a contract.                           *Affirmed.*

---

Note.—On specific performance of contract to leave property in con-
sideration of services or support, see note in 44 L.R.A.(N.S.) 733.

The Court in the opinion stated the facts as follows:

These are cross appeals from a decree in the supreme court of the District in a suit for specific performance of an agreement between Ellen Gertrude Carter, plaintiff below, and Smith Twyman, deceased.

Smith Twyman was born a slave. Reuben Twyman, his son, who was sixty-two years old at the time he testified, stated that his father was about ninety years of age at the time of his death in 1913. In 1892 Smith Twyman was living alone at No. 502 Twenty-first street, northwest, in this city, and the evidence pretty clearly shows that his advancing age rendered it necessary that he should have some one to care for him and keep his house. In fact, Reuben Twyman, testifying for the defendant, stated that his father wanted one of his three boys to live with him, but that they were unwilling to come here. Accordingly, in the year 1892, Twyman entered into an arrangement with his grandniece, the plaintiff, under which she went to live with him, and from that time until his death she cared for him, did his housework, and really took the place of a daughter. Twyman agreed to pay her for her services, but his payments soon were discontinued. While plaintiff did not devote all her time to caring for Twyman, she nevertheless become dissatis-fied, and in 1902 indicated an intent to leave. In the presence of her two sisters, Bertha and Jennie, and a woman named Janet Green, the matter was discussed with Twyman, who, according to one of the sisters, finally said: "If Gertrude intends going away now, she will not get anything; but if she will stay, I am willing now to draw up a statement so that she will certainly see that she is going to get something." The sister immediately wrote out the following, which then was signed and witnessed:

Sept. 14, 1902.

At my death I want house no. 502 and 8 eight hundred dollars to go to my grand ni-ce E. Gertrude Gilmore.

(Signed)                Smith Twyman.

(Signed) Bertha W. Francis.

Jennie Gilmore.

Twyman left a will, executed shortly before his death, in which he bequeathed to the plaintiff only $100.

The learned trial justice found from all the evidence that an agreement had been entered into between Twyman and the plaintiff, whereby he was to devise to the plaintiff the house in which he lived and to bequeath to her the sum of $800, as compensation for services rendered and to be rendered. Cross appeals were taken, the defendant contending that under the pleadings and evidence the decree should have been for him, while the plaintiff contended that, in addition to the house and money mentioned in said paper writing, the court should have allowed compensation to her from the date of said instrument to the time of Twyman's death.

*Mr. J. H. Ralston, Mr. W. E. Richardson, Mr. H. T. Winfield,* and *Mr. George S. Shackelford* for Twyman.

*Mr. Charles A. Keigwin* for McKay.

Mr. Justice Robb delivered the opinion of the Court:

We think the facts clearly bring this case within the rule laid down in *Whitney* v. *Hay,* 15 App. D. C. 154, affirmed in 181 U. S. 77, 45 L. ed. 758, 21 Sup. Ct. Rep. 537; *Cherry* v. *Whalen,* 25 App. D. C. 537; *Brown* v. *Sutton,* 129 U. S. 238, 32 L. ed. 664, 9 Sup. Ct. Rep. 273. All the circumstances irresistibly point to the existence of a contract between Twyman and the plaintiff, and the paper which he signed in 1902, looking to the future as it did, evidently expressed the final arrangement. That this paper was witnessed by sisters of the plaintiff is no reason for looking upon it with suspicion. As was said in *Brown* v. *Sutton,* 129 U. S. 238, 248, 32 L. ed. 664, 668, 9 Sup. Ct. Rep. 273, there is nothing to discredit their testimony, which not only is wholly uncontradicted, but also consistent with all the circumstances of the case. Under the facts disclosed, the plaintiff, having carried out her part of the contract, clearly is entitled to the relief granted, but we are equally

clear in the view that it was not intended that she should receive more.

The decree is affirmed, with costs to the plaintiff. *Affirmed.*